U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed April 12, 2007                       **United States Bankruptcy Judge**

---

**UNTIED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Douglas Evan Moffitt | § | Case No. 04-91391-DML-13 |
| Theresia Ann Moffitt | § | |
| | § | |
| Debtors. | § | Chapter 13 |

**MEMORANDUM OPINION**

On March 23, 2007, this court conducted a hearing on the above-referenced debtors' (the "Debtors") "*Motion to Determine Status of Automatic Stay*" (the "Motion"). The court heard oral arguments from counsel for the Debtors and counsel for Premier Finance ("Premier" and together with Debtors, the "Parties"), and received into evidence exhibits identified as necessary below. The court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G), (L) and (O). This memorandum opinion embodies the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 and 9014.

**Background**

The material facts giving rise to this dispute are undisputed. Prior to Debtors' bankruptcy filing, Debtors and Premier entered into a Motor Vehicle Retail Installment Contract whereby a

security interest was created in favor of Premier in the following property: 2002 Chevrolet S10 Pickup, VIN #1GCCS19W228225481 (the "Vehicle"). Debtors filed for relief under chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on November 29, 2004.[1] The Vehicle was listed on the Debtors' Schedule D, and Premier was listed as the lien holder.[2]

On February 3, 2005, Premier filed its "*Motion to Lift Automatic Stay*" (the "Stay Motion"). In the Stay Motion, Premier requested that the court enter an order allowing it to take possession of and foreclose its security interest in the Vehicle, or in the alternative, order that the Debtors' use of the Vehicle be conditioned on Debtors providing Premier with adequate protection for the value of Premier's interest in the Vehicle. Premier alleged that the amount Debtors owed on the Vehicle as of the date of the Stay Motion was $13,646.43. On March 2, 2005, the court entered an agreed order on the Stay Motion (the "Stay Order"). The Stay Order provided that

> [t]he plan payments for the benefit of Premier Finance shall be in the amount of $559.21 a month for 22 months due on the 13th of each month, beginning February 15, 2005 until the sum of $11,650.00 plus 5.75% interest is paid.

The Stay Order also provided that in the event of Debtors' failure to make the plan payments as set out in the Stay Order, the stay would automatically terminate and Premier would be entitled to foreclose, repossess, and resell the Vehicle, provided that Premier follow the notice procedures outlined in the Stay Order and provided that the Debtors did not cure such default within the time period and manner provided in the Stay Order.

On December 15, 2005 (approximately 9 months after entry of the Stay Order), this court entered the "*Order Confirming Final Chapter 13 Plan, Valuing Collateral; and Allowing*

---

[1] The case was filed prior to October 17, 2005 and therefore the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") does not apply to this case.

[2] The value of the Vehicle was listed as $11,207.50. The debt to Premier was listed as $17,000 and the unsecured deficiency was listed as $5,792.50. The debt on the Vehicle was scheduled as contingent, disputed, or unliquidated.

*Debtor's Attorney's Fees (With Revisions to the Plan as Specified Herein)*"[3] (the "Confirmation Order"). With respect to Premier and the Vehicle, the Plan provided that Premier's lien "will be released after payment through the plan of [Premier's] allowed secured claim, with interest, to the extent of the lesser of the amount listed in the claim column or the amount listed in the value column…" *See* Debtor's Exhibit 3. The amount listed in the claim column was $13,646.43 and the amount listed in the value column is $11,650. *See id*.

In November 2006, Debtors failed to make the required payment under the Plan. In the month of November 2006, the chapter 13 Trustee distributed only $13.57 to Premier. *See* Premier's Exhibit A. On November 15, 2006, counsel for Premier sent a notice of default of the Stay Order to Debtors. *See* Premier's Exhibit B. On November 28, 2006, counsel for Premier sent a facsimile transmission to Debtors' counsel indicating that Debtors had not cured the default within the ten (10) days provided in the Stay Order. *See* Premier's Exhibit D. On December 8, 2006, counsel for Premier sent a facsimile transmission to Premier indicating that Premier was free to repossess the Vehicle.[4] *See* Premier's Exhibit F.

At some point in December 2006, Premier attempted to repossess the vehicle but could not locate it. Meanwhile, Debtors resumed their Plan payments and the chapter 13 Trustee resumed payments to Premier. The chapter 13 Trustee disbursed $742.40 to Premier on December 22, 2006 and $563.44 to Premier on January 26, 2007. *See* Premier's Exhibit A. As of this final disbursement date (January 26, 2007), the chapter 13 Trustee's website indicates that the principal amount paid to Premier is $11,650. *See id*. Debtors' argument is that the

---

[3] The "*Debtor's(s') Final Chapter 13 Plan and Motion for Valuation*" shall be herein referred to as the "Plan."

[4] Counsel for Premier provided the court with a copy of a notice of termination of insurance on the Vehicle. *See* Premier's Exhibit G. At the hearing on the Motion, counsel for Debtors advised the court that Debtors obtained substitute insurance. Conditioned on this, counsel for Premier did not ask the court to make any findings regarding the alleged termination of the insurance and therefore this memorandum opinion will not address that issue.

Confirmation Order sets Premier's claim at $11,650 and therefore Premier's claim is paid in full. Accordingly, Debtors argue, as provided in the confirmed Plan, Premier must tender title to the Vehicle to Debtors.  Counsel for Premier argues, however, that although Debtors' payment of the $11,650 satisfies the requirements of the Plan and Confirmation Order, that is irrelevant to Premier's right to repossess the Vehicle because, pursuant to the Stay Order, the stay lifted on the eleventh day following the notice of default that was sent to the Debtors.

## Discussion

The dispute in this case arises from a conflict between application of the Stay Order and the Confirmation Order.  Ultimately, the court must decide which order controls.

A confirmed chapter 13 plan binds the debtor and each creditor, whether or not the claim of such creditor is provided for in the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.   11 U.S.C. § 1327(a).   Thus, under section 1327(a), confirmation binds the debtor and all creditors, determining the rights and liabilities of the parties.  *Green Tree Fin. Corp. v. Garrett (In re Garrett)*, 185 B.R. 620 (Bankr. N.D. Ala. 1995). Moreover, confirmation of a chapter 13 plan has *res judicata* effect unless the plan is subsequently modified by a bankruptcy court order.  *See* 11 U.S.C. §§ 1327 and 1329.  There are no orders in this case entered subsequent to the Confirmation Order, and therefore the court must give full *res judicata* effect to the Confirmation Order.  In so doing, the court concludes that the Confirmation Order trumps the Stay Order.  The court relies primarily on two cases addressing this issue.

In the *Garrett* case, the bankruptcy court entered an order terminating the stay as to a creditor pre-confirmation.  Subsequently, the debtor's chapter 13 plan was confirmed by the bankruptcy court.  In the period between the lift of the automatic stay and the confirmation of the

debtor's plan, the creditor did not exercise its right to foreclose. The bankruptcy court concluded that "[a]fter a plan is confirmed, the binding effect of the [confirmation] order precludes any of the parties from relief from the automatic stay based upon *any* facts occurring preconfirmation." *Id*. at 623 (emphasis added); *citing Lawson v. Lackey*, 148 B.R. 626, 627 (Bankr. N.D. Ala. 1992); *Lomas Mortgage USA v. Wiese (In re Wiese)*, 980 F.2d 1279, 1284 (9th Cir. 1992); *In re Minzler*, 158 B.R. 720 (Bankr. S.D. Ohio 1993); *Lester Mobile Home Sales, Inc. v. Woods (In re Woods)*, 130 B.R. 204 (W.D. Va. 1990).

The bankruptcy court also concluded that "[o]nce a plan is confirmed the only cause for relief from the stay that may be validly asserted is the debtor's material failure to comply with the plan." *See Garrett*, 185 B.R. at 623. The court in *Garrett* ultimately held that the preconfirmation lift stay order did not change the binding effect of the confirmation order because the terms of the lift stay order were not expressly provided for in the confirmation order. *See id*. at 623.[5]

The Bankruptcy Appellate Panel of the Tenth Circuit was faced with facts very similar to those in the case at bar in *Diviney v. Nationsbank of Texas, N.A. (In re Diviney)*, 225 B.R. 762 (B.A.P. 10th Cir. 1998). In *Diviney*, the debtors and creditor (an automobile financer) entered into a preconfirmation agreed order regarding the automatic stay. *See id*. at 765. The agreed order contained terms comparable to the Stay Order, allowing the creditor to notice the debtors upon the debtors' default of payments. *Id*. The agreed order contained a "drop dead" clause providing that upon the debtors' failure to cure a default in payment within the 10 day allowable period, the automatic stay would immediately terminate as to the creditor (the automobile

---

[5] In arriving at this holding, the bankruptcy relied on a chapter 11 case: *In re W.B. Simons*, 113 B.R. 942, 949 (Bankr. W.D. Tex. 1990). The *Simons* court also held that a confirmation order trumped a preconfirmation lift stay order. The *Garrett* court concluded that the general binding effect of confirmation orders in chapter 11 applies to a chapter 13 plan and therefore Simons was persuasive authority. *See Simons*, 113 B.R. at 949. The court agrees with this conclusion.

financer), allowing the creditor to repossess the vehicle without further notice. *Id*. Subsequently, the court entered an order confirming the debtors' chapter 13 plan. Over two years later, the creditor repossessed the vehicle after following the procedures established in the agreed stay order.[6]

In discussing 11 U.S.C. § 1327(a), the Bankruptcy Appellate Panel held that section 1327(a)'s effect is that "unless expressly preserved in the plan or the order confirming the plan, all pre-confirmation agreements and orders concerning the treatment of a claim are superseded by the terms and provisions of the confirmed plan." *Id*. at 771, *citing Garrett*, 185 B.R. at 623. The panel held that as a result of the creditor's failure to seek to incorporate the provisions of the agreed stay order into the final plan or confirmation order, the creditor could not rely upon the agreed stay order as authorization for repossession. *See Diviney*, 225 B.R. at 771.

The court is persuaded by these two cases. Section 1327(a)'s mandate is clear, and unless preconfirmation agreements make their way into a chapter 13 plan or confirmation order, the court will not read those agreements into the confirmation order. To do so would be a violation of the plain meaning of 11 U.S.C. § 1327(a).[7] The analysis might be different if the Stay Order has been entered after the Confirmation Order because section 1329 provides for modifications of plans after confirmation. But here, the Stay Order *preceded* the Confirmation Order. Thus, the Confirmation Order subsumed whatever rights Premier had prior to the Confirmation Order, and therefore given the Debtors' possession of the Vehicle and full payment of Premier's secured claim, this court must look to the Plan to determine the rights of the Parties.

---

[6] The facts in the *Diviney* case are slightly different (if more favorable to the creditor) than in the case at bar. In *Diviney*, the debtors' chapter 13 case was dismissed between the time the debtors' chapter 13 plan was confirmed and the repossession. The case was subsequently reinstated prior to the repossession.

[7] The court is required to apply the provisions of the Bankruptcy Code according to their plain meaning. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 1, 6 (1989).

The Plan provides that Premier's lien "will be released after payment through the plan of [Premier's] allowed secured claim, with interest, to the extent of the lesser of the amount listed in the claim column or the amount listed in the value column…" *See* Debtor's Exhibit 3. The amount listed in the claim column was $13,646.43 and the amount listed in the value column is $11,650. *See id*. Premier's allowed secured claim is $11,650 and Premier's lien on the Vehicle will be released when this amount is paid.[8] The Parties do not dispute that Debtors have completed the payments to Premier pursuant to the Plan, i.e. $11,650. Thus, pursuant to the Confirmation Order, Premier's lien on the Vehicle is released. Moreover, the Plan provides that "[Premier] will deliver title with lien released to the Debtor(s) after receiving payment of the amount specified in this paragraph." *See id*. Premier must deliver the title to the Vehicle to Debtors pursuant to the Confirmation Order.

Although the Parties do not dispute that Debtors missed a payment in November 2006, neither the Plan nor the Confirmation Order provides a specific remedy for Premier. If Premier believed that it was entitled to a remedy against Debtors, Premier could have sought relief from the stay. *See, e.g., Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985) (holding that relief from stay after confirmation of a chapter 13 plan is not barred by section 1327(a) when the relief is based on defaults in post-confirmation payments). Premier did not do so, electing instead to rely on a preconfirmation interlocutory order[9] of this court regarding the automatic stay.

---

[8] As previously mentioned, the case was filed before BAPCPA took effect and therefore the paragraph following section 1325(a)(9) does not apply to this case.

[9] Because the court did not make a final determination on whether the stay should be lifted, i.e. certain conditions had to be met for the stay to lift, the Stay Order was an interlocutory order. *See* 1 Collier on Bankruptcy ¶ 5.08 (15th ed rev. 2005).

The court also notes that at the hearing on the Motion, Premier argued that it is entitled to not only repossess the Vehicle, but it is also entitled to keep the payments that Debtors made in December 2006 and January 2007. Premier argues that $6,000 of debt on the Vehicle is still listed on Premier's books. Therefore, if Premier sells the Vehicle and, together with payments made under the Plan, receives in excess of $11,650, the net effect would be that Premier would realize a substantial return on its unsecured deficiency. In this case, unsecured creditors are not receiving a distribution. *See* Debtor's Exhibit 3. Accordingly, Premier would be the only creditor that would receive a distribution on its unsecured claim. But as the *Diviney* panel concluded:

> [a]fter confirmation of a Chapter 13 plan, the stay ... protects the plan's provisions for the distribution of the debtor's plan payments and any other property to be distributed by precluding creditors from obtaining forced payments ahead of creditors with claims of equal or greater priority.

*Diviney*, 225 B.R. at 770. Premier would have this court alter the priority scheme outlined by the Bankruptcy Code. The court will not do so.

### Conclusion

The court concludes that the provisions of the Stay Order that Premier relies on to repossess the Vehicle were not incorporated into the Confirmation Order. Accordingly, the court holds that Premier is not entitled to repossess the Vehicle given that Debtors have fully paid Premier's secured claim.[10] Thus, the court concludes that Premier's refusal to tender the title to the Vehicle to the Debtors is in violation of the Confirmation Order.

Counsel for Debtors is directed to prepare and submit an order consistent with this memorandum opinion.

---

[10] Had the Vehicle been repossessed prior to the time Debtors fully paid for the Vehicle as provided in the Plan and Confirmation Order, the Court's holding might be different.